798 F.2d 632
 William MONAGHAN, Theodore Desantis, John James, Foundations
& Structures, Inc., William E. Monaghan
Associates, and MJD Construction
Company, Inc., Appellants,
v.
Dean DEAKINS, New Jersey Division of Criminal Justice;
Irving Dubrow, New Jersey Division of Criminal Justice;
Robert Gray, New Jersey Division of Criminal Justice;
Ronald Lehman, New Jersey State Police; Albert G.
Palentchar, New Jersey Division of Criminal Justice; Donald
A. Panfile, New Jersey Department of Treasury; Walter
Price, New Jersey Division of Criminal Justice; William
Southwick, New Jersey Division of Criminal Justice; Ronald
Sost, New Jersey Division of Criminal Justice; John Doe, an
individual co- ordinating a search of the premises of
Foundations & Structures, Inc.; John Doe, an individual
supervising investigators in the New Jersey Division of
Criminal Justice; and John Doe, an individual training
investigators in the New Jersey Division of Criminal Justice.
 No. 85-5589.
 United States Court of Appeals,
Third Circuit.
 Argued April 17, 1986.
Decided July 31, 1986.
Rehearing Denied Sept. 4, 1986.
Dissenting Statement on Petition
for Rehearing Sept. 4, 1986.
 
 Patrick T. McGahn, Jr. (argued), Sharon Donofrio, McGahn Friss & Miller, Atlantic City, N.J., Edward N. Fitzpatrick, (argued), Kathy M. Hooke, Clapp & Eisenberg, Newark, N.J., for appellants.
 Irwin I. Kimmelman, Atty. Gen. of N.J., Steven Pasternak, Deputy Atty. Gen., Larry Etzweiller, Deputy Atty. Gen. (argued), Allan J. Nodes, Deputy Atty. Gen., Div. of Criminal Justice, Appellate Section, Trenton, N.J., for appellees.
 Before ADAMS, GIBBONS, and STAPLETON, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 Three individuals and three business entities appeal from a final order dismissing their complaint against several officials of the New Jersey Division of Criminal Justice and from the denial of their motion for a preliminary injunction. The plaintiffs-appellants sought damages, permanent injunctive relief, and preliminary injunctive relief. The district court held that the rule of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), required dismissal of their complaint. We reverse the order dismissing the complaint but affirm the denial of the plaintiffs' motion for a preliminary injunction.
 
 I. The Complaint
 
 2
 The complaint alleges that on October 4, 1984 a judge of the Superior Court of New Jersey issued a warrant authorizing officers of the Division of Criminal Justice to search the premises of Foundations and Structures, Inc. (Foundations) in Tuckahoe, New Jersey and to seize certain documents and business records. Foundations, owned by Theodore DeSantis, William Monaghan, and John James, is engaged in the engineering and construction business. Monaghan, DeSantis, and James are also owners of Monaghan Associates and MJD Construction Company, Inc.
 
 
 3
 About 7:00 a.m. on October 5, 1984 defendants Deakins and Sost, officers of the Division of Criminal Justice, awakened Monaghan at his home. Monaghan previously had testified before a Cape May County grand jury investigating allegations of government corruption in that county, and Deakins and Sost sought Monaghan's cooperation in connection with an investigation of such corruption. Monaghan told them that his attorney had advised him not to answer questions about the subjects under inquiry unless the attorney was present. He then called the attorney and arranged for a meeting with Deakins and Sost later that day. Despite this arrangement, Deakins and Sost threatened to focus their investigation on Monaghan and his businesses if he did not cooperate.
 
 
 4
 While Deakins and Sost were visiting Monaghan, two other defendants called on DeSantis at a construction site in Sea Isle City, New Jersey; they also attempted to enlist his cooperation in the corruption investigation. When DeSantis insisted that he would not answer questions unless his attorney were present, these defendants threatened him in the same way Deakins and Sost had threatened Monaghan.
 
 
 5
 After these early morning attempts to conscript Monaghan and DeSantis had failed, certain other defendants arrived at the premises of Foundations to execute the warrant. Those defendants occupied the premises for nearly eight hours, barricading the entrance to the site with a state vehicle. They searched exiting vehicles, recorded serial numbers of construction machinery on the site, and took photographs. They used the company telephone without authorization and denied such use to others. They required every person--nonemployees included--who happened to be at the multi-acre site to line up and produce identification. Among those detained were Monaghan, DeSantis, and James.[1]
 
 
 6
 Eventually, the defendants loaded into state vehicles cartons containing hundreds of documents, many of which were not within the scope of the warrant and many of which were necessary to the operation of the business. Among the papers indiscriminately seized were dozens of attorney-client communications, some of which were in a folder plainly marked "Grand Jury" and thus were readily identifiable as such.[2] As of the date of the filing of this opinion, some eighteen months after the October 1984 raid, the state has not indicted or charged any of the plaintiffs, and it retains possession of most of the seized documents.
 
 II. The District Court Proceedings
 
 7
 On December 26, 1984 the plaintiffs filed in the District of New Jersey a complaint in which they alleged that the October 5 search violated the fourth amendment. They charged that the search was unlawfully motivated in that it sought no information that could not have been obtained in an orderly manner by a subpoena duces tecum and that it was but a pretext designed to coerce Monaghan, DeSantis, and James into cooperating in an investigation the defendants were conducting. The plaintiffs sought return of the seized documents and damages pursuant to section 1983, 42 U.S.C. Sec. 1983 (1982).
 
 
 8
 The defendants moved for dismissal of the complaint, contending principally that the district court should abstain because of then-ongoing state proceedings. The plaintiffs countered with a motion for a preliminary injunction ordering the return of the documents. In an order dated August 6, 1985 the district court dismissed the plaintiffs' complaint in its entirety. It held that abstention was appropriate and found further that, even if it were not, the plaintiffs did not qualify for a preliminary injunction. Monaghan v. Deakins, Civil Action No. 84-5369 (D.N.J. Aug. 6, 1985).
 
 
 9
 III. Abstention and Dismissal of the Complaint
 
 
 10
 The plaintiffs first challenge the district court dismissal, on abstention grounds, of their claims for damages and permanent injunctive relief. Because the district court dismissed the complaint, we must take its allegations to be true.[3] Our review is plenary, and we can affirm only if, assuming the truth of those allegations, the district court could not have granted, as a matter of law, any of the requested relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).
 
 A. The Damage Claim
 
 11
 The plaintiffs urge that whatever else may be said in favor of the order dismissing the complaint, the district court plainly erred in dismissing their claim for money damages and attorney fees. We agree. It is settled in this circuit that a district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings. Crane v. Fauver, 762 F.2d 325, 328-29 (3d Cir.1985) (reversing district court dismissal of claims for damages and attorney fees); Williams v. Red Bank Board of Education, 662 F.2d 1008, 1022-24 (3d Cir.1981) (same). The defendants do not contend that the ongoing state proceedings at issue in this case offer the plaintiffs any opportunity to recover either damages or attorney fees. Nonetheless, they offer several arguments in support of the district court's dismissal of the damage claims.
 
 
 12
 The defendants' principal contention is that the eleventh amendment, as interpreted by the Supreme Court in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 97-124, 104 S.Ct. 900, 906-921, 79 L.Ed.2d 67 (1984), bars the district court from awarding damages against them individually, even with respect to alleged violations of the federal Constitution. The state officials neither cite any authority nor proffer any credible argument for such an extreme proposition, and we reject it.
 
 
 13
 Alternatively, the state urges us to affirm the district court's Younger -based dismissal of the damage claim on the ground that the plaintiffs could have asserted that claim in a state tribunal. That, of course, is true of every section 1983 claim, see, e.g., Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (affirming judgment in section 1983 claim brought in Maine state court), and it was true of the damage claims asserted in Crane and Red Bank. It, however, is no reason for a district court to abstain from adjudicating a cognizable section 1983 claim.
 
 
 14
 No argument advanced by the defendant-appellees convinces us that the holdings of Crane and Red Bank do not control this case or that those cases are no longer valid. Consequently, we will reverse the district court's dismissal of the plaintiffs' claims for damages and attorney fees.
 
 B. The Claim for Return of the Property
 
 15
 Whether the district court should have dismissed the plaintiffs' request for return of the seized property presents a closer issue. To resolve this issue, we must decide whether the Younger doctrine requires a district court to abstain in a case in which the federal plaintiff is the target of an ongoing New Jersey state grand jury investigation.[4]
 
 
 16
 As a preliminary matter, we address the plaintiffs' contention that, because of the type of relief they sought, the Younger rule is not applicable in this case. It is true that in most cases in which federal courts have abstained under the Younger doctrine the federal plaintiffs sought relief that would have enjoined ongoing state proceedings. And it is undisputed that in this case the plaintiffs did not seek to enjoin any state proceeding but rather simply requested the district court to order the state to return the seized documents. Yet, for the district court to have entertained that request, it would have had to adjudicate the plaintiffs' constitutional claim. The Supreme Court has held that Younger bars federal adjudication of constitutional claims if there is a qualifying, ongoing state proceeding in which those claims could be adjudicated, regardless of the relief requested by the federal plaintiff. See Samuels v. Mackell, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971) (relying on Younger to dismiss a claim for declaratory relief and holding that, in cases in which injunctive relief is improper, declaratory relief also is improper); Fair Assessment in Real Estate Association, Inc. v. McNary, 454 U.S. 100, 107-15, 102 S.Ct. 177, 181-85, 70 L.Ed.2d 271 (1981) (relying on Samuels in holding that Younger bars district courts from adjudicating section 1983 claims that would require resolution of constitutional issues already before state tribunals). We believe this rule applies to this case and therefore hold that the fact that the plaintiffs sought only a return of the documents does not except them from Younger abstention.
 
 
 17
 Having concluded this, we move to the principal issue presented by this appeal--whether the existence of the state grand jury proceeding required the district court to abstain under Younger. This is an issue of first impression in this court.[5]
 
 
 18
 In most of the cases in which the Supreme Court has applied the Younger rule, the federal plaintiffs were defendants in state civil or criminal proceedings ongoing at the time they filed their federal complaints. See, e.g., Younger v. Harris, 401 U.S. 37, 41, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971) (federal plaintiff was defendant in state criminal action that state was "actually prosecuting" when federal complaint was filed); Huffman v. Pursue, Ltd., 420 U.S. 592, 595-98, 95 S.Ct. 1200, 1204-05, 43 L.Ed.2d 482 (1975) (federal plaintiffs were defendants in nuisance action brought by county officials in state court and already adjudicated by state trial court); Judice v. Vail, 430 U.S. 327, 328-30, 97 S.Ct. 1211, 1213-15, 51 L.Ed.2d 376 (1977) (federal plaintiff was judgment debtor from completed state proceeding in which he had refused to participate); Trainor v. Hernandez, 431 U.S. 434, 435-38, 97 S.Ct. 1911, 1913-15, 52 L.Ed.2d 486 (1977) (federal plaintiffs were defendants in civil suit ongoing at time they filed federal complaint); Moore v. Sims, 442 U.S. 415, 421, 99 S.Ct. 2371, 2376, 60 L.Ed.2d 994 (1979) (federal plaintiffs were party to state-court, child-custody proceeding at time they filed federal complaint). However, in two cases, Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), and Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the federal plaintiffs were not parties to any trial-like proceeding. Because, according to the complaint in this case, the state has filed no charge, either civil or criminal, against the plaintiffs, such guidance as is available must be found in these two cases.
 
 
 19
 In Hawaii Housing the Supreme Court held that a district court should address the merits of a constitutional challenge to a state condemnation statute even though at the time the federal complaint was filed the state statute compelled the federal plaintiff to participate in a state arbitration proceeding. Writing for the Court, Justice O'Connor stated that, "[s]ince Younger is not a bar to federal court action when state judicial proceedings have not themselves commenced, abstention for ... administrative proceedings [is] not required". 104 S.Ct. at 2328 (citation to Middlesex County, 457 U.S. at 433, 102 S.Ct. at 2522 omitted).
 
 
 20
 In Middlesex County the Court held that Younger barred a district court from hearing a constitutional challenge to New Jersey's attorney-discipline rules when at the time of the filing of the federal complaint the state's disciplinary organization formally had charged the federal plaintiff with a violation of the rule he sought to challenge in the district court. See 457 U.S. at 437, 102 S.Ct. at 2524. The Court based its holding on the fact that, although the disciplinary body was not the final arbiter of constitutional claims, its proceedings were, under New Jersey law, part of a judicial proceeding pending in the New Jersey Supreme Court. Id. at 433-34, 102 S.Ct. at 2522.
 
 
 21
 The holdings and rationales of these cases adumbrate a clear line: Younger abstention is appropriate only when there is pending a proceeding in which a state court will have the authority to adjudicate the merits of a federal plaintiff's federal claims. Indeed, the Court emphasized in Middlesex County that the critical factor was the availability in the pending state proceeding of an adequate opportunity to adjudicate the constitutional claims raised in the federal litigation. 457 U.S. at 432, 102 S.Ct. at 2521.
 
 
 22
 The defendant state officials do not urge that a New Jersey grand jury has the authority to adjudicate anything. A grand jury proceeds ex parte. N.J. Crim.Prac.R. 3:6-6. It can issue an indictment, which is no more than a charge that the defendant has violated the criminal law. Only when such a charge is filed does there commence a judicial proceeding that affords the adjudicatory opportunity that Hawaii Housing and Middlesex County require.[6] No indictment had been returned against the plaintiffs at the time they filed their complaint in the district court. Thus there was not, for Younger purposes, any ongoing state proceeding warranting abstention by the district court.
 
 
 23
 The state responds, nevertheless, that a grand jury proceeding should fall within the Younger rule because such a proceeding is important to the state and to some extent is subject to judicial supervision. Neither reason serves to distinguish Hawaii Housing. Condemnation proceedings are also important to the state, and those proceedings are subject to judicial supervision.
 
 
 24
 The state officers urge further that, even if no judicial proceeding was pending when the plaintiffs filed their complaint, there was available at that time a state judicial remedy by which the plaintiffs could have obtained the return of their property; they contend that the availability of such a remedy mandates district court abstention. While it may be true that such a remedy was available to the plaintiffs,[7] in no case has the Supreme Court or this court ever turned the propriety of a Younger dismissal upon the mere availability of a state judicial proceeding. Indeed, the holding of Hawaii Housing is directly in opposition to such an extension of Younger.
 
 
 25
 The state officials' final position is that a Younger dismissal was proper because after the plaintiffs filed their federal complaint some proceedings with respect to the property in issue occurred before the Superior Court Judge who authorized the search warrant. They refer specifically to the fact that, while the state officials' motion to dismiss and the plaintiffs' cross-motion for return of the documents were pending before the district court, the Division of Criminal Justice, proceeding ex parte, obtained an order directing certain of the plaintiffs to show cause why certain of the seized documents that had been sealed by consent should not be unsealed. It is the appellee state officials' position that these proceedings were ongoing judicial proceedings justifying district court abstention.
 
 
 26
 The Supreme Court has held that in limited circumstances a district court should abstain from adjudicating a federal complaint if relevant state proceedings commence after the filing of the federal complaint. See Hicks v. Miranda, 422 U.S. 332, 348-50, 95 S.Ct. 2281, 2291-92, 45 L.Ed.2d 223 (1975). However, such abstention is inappropriate in this case for two reasons. First, since the trial court granted a Rule 12(b)(6) motion--which confines our review to the complaint--the post-complaint proceedings are not relevant to our review of the district court action. Second, if they were relevant, the contention would not be dispositive, except, perhaps, with respect to issues of privilege and work product tendered by the Division of Criminal Justice to the state court with respect to the sealed documents. The claim for return of property with respect to all the other seized materials would remain.
 
 
 27
 At the time the plaintiffs filed their federal complaint no state judicial proceeding in which they could have adjudicated their constitutional claim for return of the seized property was pending. We therefore hold that the district court erred in dismissing the claim on abstention grounds.[8]IV. The Motion for the Preliminary Injunction
 
 
 28
 The plaintiffs moved in the district court for a preliminary injunction ordering the return of the seized documents. The district court denied this motion, and the plaintiffs appeal.
 
 
 29
 Unlike our review of the dismissal of the complaint under Rule 12(b)(6), which is plenary, we review the denial of a preliminary injunction for an abuse of discretion. See Klitzman, Klitzman & Gallagher v. Krut, 744 F.2d 955, 958 (3d Cir.1984). In assessing the plaintiffs' motion the district court was obliged to consider whether the movants had made a strong showing of likelihood of success on the merits, whether they had shown that without the requested relief they would suffer irreparable injury, whether other parties would be harmed by the grant of the requested injunction, and whether the public interest favored such relief. Id. at 958-59.
 
 
 30
 The plaintiffs rely principally upon assertions that they likely will prevail on the merits of their claim and that they will suffer irreparable harm. They concede, however, that any harm to their business is mitigated by the fact that, although the state officials retain possession of the records, their agents have been granted access to them. As to the likelihood of their succeeding on the merits, there are many issues, both factual and legal, that the state raises. Thus we cannot say that the district court abused its discretion in denying the plaintiffs' request for a preliminary injunction.[9]
 
 V.
 
 31
 The judgment dismissing the complaint will be reversed. The order denying the motion for a preliminary injunction will be affirmed. The case will be remanded for proceedings consistent with this opinion.
 
 
 32
 ADAMS, Circuit Judge, concurring in part and dissenting in part.
 
 
 33
 The principal holding of the majority is that the district court erred when it abstained under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), in order to avoid interfering with an ongoing state grand jury investigation and concomitant state court proceedings regarding the propriety of a seizure of plaintiffs' documents. Although I concur with the majority that the district court erred in dismissing plaintiffs' claims for money damages, I respectfully disagree on the Younger issue. In my view, abstention is appropriate with regard to plaintiffs' request for an order requiring state officials to return documents obtained allegedly in violation of the fourth amendment, since a means exists by which that constitutional claim may be raised in the pending state court proceedings.
 
 I.
 
 34
 It is helpful to an understanding of the abstention issue in this case to recount some of the pertinent facts in the factual and procedural history of this appeal not referred to in the majority's opinion. On October 4, 1984, Judge Samuel D. Lenox, Jr. of the New Jersey Superior Court issued a warrant authorizing state police officers and investigators of the New Jersey Division of Criminal Justice to search the premises of Foundations & Structures, Inc. (F & S) for evidence of theft, bribery, and tampering with records. Judge Lenox had been assigned the responsibility of supervising a state grand jury investigating alleged corruption in the construction industry pursuant to N.J.Stat.Ann. Sec. 2A:73A-6 (West 1976). The warrant was executed on October 5. On the same day, three state grand jury subpoenas were served on plaintiff Theodore DeSantis, requiring the production of certain records of F & S and Monaghan Associates. These incidents gave rise to plaintiffs' claim under the fourth amendment.
 
 
 35
 At the time of the search, plaintiffs protested that they had received an inadequate inventory of the documents seized. To resolve the dispute, plaintiffs and the state officials telephoned Judge Lenox, as the supervising judge who had issued the search warrant. Judge Lenox ordered that all documents in dispute be placed in sealed cartons, that were not to be opened until the adequacy of the inventory could be determined. The documents seized were then placed in the evidence vault at the Division of Criminal Justice in Trenton.
 
 
 36
 Plaintiffs filed this lawsuit under 42 U.S.C. Sec. 1983 (1982) on December 26, 1984, claiming abridgements of their rights under the fourth, fifth, sixth, and fourteenth amendments, as well as stating several pendant claims under state tort law. They sought a preliminary injunction requiring defendants, the state investigative authorities involved, to return all documents seized that were privileged or beyond the scope of the warrant, and a permanent injunction requiring the return of all documents. Plaintiffs also requested preliminary and permanent injunctions against future unreasonable searches and seizures, compensatory and punitive damages, and attorney fees. Defendants answered the complaint on January 28, 1985, by moving in the district court to dismiss the case under Younger v. Harris. Plaintiffs responded to this motion on February 15 by again requesting preliminary injunctive relief.
 
 
 37
 On February 19, 1985, while the federal court proceedings remained in the pleadings stage, defendants returned to Judge Lenox and obtained an ex parte order to show cause why the sealed documents should not be opened. Plaintiffs then moved to quash the order on the grounds that it had been improperly issued on an ex parte basis and that defendants had sought the order solely as a device to induce the federal court to abstain pursuant to Younger. At a hearing before Judge Lenox on the motion to quash held March 11, 1985, plaintiffs urged the state court not to interfere with their federal action by allowing the state authorities to unseal the documents.
 
 
 38
 The state court, however, asserted that when it ordered the documents sealed on October 5, 1984, it contemplated that the parties would return to it to resolve further disputes concerning the propriety of the seizure. The court also pointed out to plaintiffs that if they wished to raise a fourth amendment claim in the state proceedings, they could file a motion for return of the documents under New Jersey Court Rule 3:5-7.[1] Finding that the order to show cause had not been improperly issued and that it was not divested of jurisdiction by plaintiffs' filing of a federal action, the state court denied plaintiffs' motion to quash.
 
 
 39
 Meanwhile, on March 8, 1985, the federal district court heard oral argument on defendants' motion to dismiss under Younger and on plaintiffs' request for preliminary relief. At the close of the hearing, the district court ordered that all discovery be stayed, and that the disputed documents remain sealed pending a further decision by the district court on the Younger issue.
 
 
 40
 Judge Lenox held a second state court hearing on the order to show cause on March 25, 1985. At that hearing, the parties discussed the procedure to be used in determining which, if any, of the seized documents were covered by the attorneyclient privilege. Plaintiffs also raised the issue whether some of the documents were subject to suppression or return because they were beyond the scope of the warrant. Judge Lenox again informed plaintiffs that if they wished to assert that certain documents had been unconstitutionally seized, they could file a motion under Rule 3:5-7. At the close of the hearing, the parties agreed to submit an order embodying the procedure for review of the documents. Judge Lenox further told the state officials that if they wished to contest any factual allegations made by plaintiffs, they could request a hearing.
 
 
 41
 On June 26, 1985, the state officials asked for such a hearing, asserting that there were disputed factual issues relevant to the determination as to which documents were privileged. The state court responded that it would schedule a hearing if defendants identified the issues they wished to raise. But the defendants did not identify the issues allegedly in dispute, and no such hearing was ever scheduled.
 
 
 42
 The state grand jury investigation of plaintiffs and their activities had been proceeding throughout this period: on February 14, 1985, the records of J.E.T. Charter Service, Inc., a subcontractor of plaintiffs, were subpoenaed; the following day, F & S's bank records were subpoenaed; and on March 8, 1985, plaintiff William Monaghan was ordered to appear at the Trenton Criminal Justice Complex to provide handwriting examplars.
 
 
 43
 Judge Brotman, the district court judge, issued his opinion denying plaintiffs' request for a preliminary injunction and dismissing the action under Younger on August 6, 1985. After a timely appeal was filed, plaintiffs DeSantis and Monaghan were subpoenaed to appear at the Trenton Criminal Justice Complex, where they were informed on December 30, 1985 that they are targets of the state grand jury investigation.
 
 II.
 
 44
 In Younger, the Supreme Court held that, absent special circumstances, a federal court should abstain from enjoining or interfering with a pending state criminal prosecution. The holding was based upon the rationale that federal-court interference with pending state proceedings is inconsistent with the principles of federalism and comity, which reflect "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the national government will fare best if the states and their institutions are left free to perform their separate functions in their separate ways." 401 U.S. at 44, 91 S.Ct. at 750.
 
 
 45
 The abstention doctrine has been expanded considerably over the years since Younger was decided. See, e.g., Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (applying absention to state bar disciplinary proceedings); Trainor v. Hernandez, 431 U.S. 434 (1977) (applying abstention in favor of a civil action by the state to recover wrongfully-obtained welfare benefits); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (applying abstention where federal plaintiff is involved in state court contempt proceedings as judgment debtor); Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (applying abstention in deference to civil nuisance action brought by county officials against theatres showing pornographic film). Most recently, the Supreme Court in Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., --- U.S. ----, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), held that the federal courts must abstain from adjudicating employment discrimination claims that are pending in state administrative tribunals. "[T]he proper respect for the fundamental role of states in our federal system," id. at ----, 106 S.Ct. 2723, the Court held, dictates that states should not be enjoined from vindicating important interests in state judicial or administrative proceedings. Id. In his opinion for the Court, Justice Rehnquist emphasized that even if the administrative proceedings would not provide a forum for resolution of constitutional claims, state judicial review of any agency decision would be sufficient for protection of any constitutional interests. Id. at ----, 106 S.Ct. at 2723-24.
 
 
 46
 The "strong policies counseling against the exercise of [federal] jurisdiction where particular kinds of state proceedings have already been commenced", id. at ----, 106 S.Ct. at 2722, are also controlling in this case, where pending state criminal proceedings undeniably present the important state interests at issue in Younger and its progeny. The district court quite properly abstained in favor of the New Jersey state courts in deference to the principles of federalism and comity that are central to our federal union.
 
 
 47
 In Middlesex County Ethics Committee, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116, the Supreme Court set forth the analysis to be applied when a federal court is urged to abstain under Younger in deference to a state proceeding. As stated there, the appropriate inquiry is three-part: "first, do [the pending state proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." Id. at 423, 102 S.Ct. at 2517.
 
 
 48
 Applying the first component of the prescribed analysis to this matter, it appears that the district court correctly ruled in its decision of August 1985 that the ongoing proceedings before Judge Lenox concerning the seized documents required it to abstain under Younger. At that time, the parties had appeared twice before Judge Lenox in New Jersey Superior Court and were involved in proceedings to determine which documents were subject to suppression because of the attorney-client privilege. Plaintiffs had further been invited by the state judge to raise their fourth amendment claim by way of a motion for return of the documents under N.J. Court Rule 3:5-7. Furthermore, during the hearing March 25, 1985, plaintiffs themselves attempted to raise the issue whether certain documents were seized beyond the scope of the warrant.
 
 
 49
 The majority asserts that, since the district court dismissed plaintiffs' action under Fed.R.Civ.P. 12(b)(6), state court proceedings that took place after the filing of the federal complaint are not relevant to the determination whether Younger abstention is appropriate. Majority Typescript at 17. However, while the district court may have described its action in disposing of the case as a dismissal of the complaint, it is plain that the court based its decision on the Younger doctrine. And the Supreme Court has clearly stated that state court proceedings occurring after the filing of a federal complaint are not to be ignored in deciding questions of Younger abstention. See Ohio Civil Rights Commission, 54 U.S.L.W. at 4863 n. 2 (holding that Younger abstention is appropriate where, as here, state proceedings were "begun before any substantial advancement in the federal action took place"); Middlesex County Ethics Committee, 457 U.S. at 436-37, 102 S.Ct. at 2523-24; Hicks v. Miranda, 422 U.S. 332, 349, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975) ("[W]here state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in federal court, the principles of Younger v. Harris should apply in full force.") In this case, as in Middlesex County, "[t]hus far in the federal-court litigation the sole issue has been whether abstention is appropriate." 457 U.S. at 437, 102 S.Ct. at 2524. It is therefore clear that this Court not only may, but must take into consideration any developments in the state court proceedings occurring subsequent to the filing of the federal complaint.
 
 
 50
 Furthermore, under the second element of the inquiry prescribed by Middlesex County, the state court proceedings plainly implicate important state interests. The injunction sought by plaintiffs would require the suppression of documents obtained by the state pursuant to a facially valid search warrant for use in an ongoing criminal investigation. In Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), decided the same day as Younger, the Supreme Court recognized that a request that evidence to be used in a state criminal trial be suppressed by federal court order constitutes nearly as great an interference in the state proceedings as would the enjoining of the proceedings themselves. In Perez the evidence sought to be suppressed was to be used in an ongoing criminal prosecution. Admittedly, no such prosecution has as yet been initiated in this case.[2] Nonetheless, the state's interest in the unhindered enforcement of its criminal laws has been repeatedly recognized by the Supreme Court as a state interest deserving of the greatest deference in cases posing problems under Younger. See, e.g., Trainor, 431 U.S. at 443, 97 S.Ct. at 1917 (Younger abstention is appropriate in deference to state civil proceedings to enforce laws in aid of and related to criminal statutes); Huffman, 420 U.S. at 604-05, 95 S.Ct. at 1208-09 (same). The state court proceedings at issue here, concerning the propriety of the seizure of documents to be used in an ongoing state grand jury proceeding and criminal investigation, implicate that interest in a very direct manner.
 
 
 51
 As to the third point of the Middlesex County analysis, it appears that plaintiffs' fourth amendment claim can be raised in the pending state proceedings. Judge Lenox twice alerted plaintiffs to the possibility of filing a motion for return of the seized documents pursuant to N.J. Court Rule 3:5-7. That rule permits persons whose property has been seized pursuant to a warrant in an unlawful search and seizure to request the return of the improperly seized property. And the New Jersey courts have held that relief is available under Rule 3:5-7 not only to one who has been charged with a crime, but also to one who has reason to believe that the property seized may be used as evidence against him in a penal proceeding. See, e.g., In re C Co., 115 N.J.Super. 262, 279 A.2d 130, 132 (App.Div.1971); State v. Fioravanti, 78 N.J.Super. 253, 188 A.2d 308, 309-10 (App.Div.1963). When plaintiffs may raise their fourth amendment claim in the state proceedings under Rule 3:5-7, there is no valid reason for a federal court to adjudicate that claim.
 
 
 52
 The majority concludes that the availability of relief in the state court pursuant to Rule 3:5-7 does not require the federal court to abstain under Younger. Its apparent rationale is that, by filing a motion for the return of the seized documents, plaintiffs would not be raising their fourth amendment claim in an ongoing state court proceeding but rather would be initiating a new and distinct legal proceeding in state court.
 
 
 53
 It is true that Judge Lenox stated during the March 11, 1985 hearing that if plaintiffs filed a motion under Rule 3:5-7, the motion might be assigned to a different judge "because that motion is typically heard by a judge of the Criminal Division." App. at 485. However, at the hearing on March 25, 1985, Judge Lenox suggested that such a motion by plaintiffs would come before him as part of the pending proceedings regarding the seizure of the documents. App. at 535. In either case, a motion for the return of the documents would involve factual issues that overlap extensively with those underlying the current state court proceeding and would therefore constitute a related aspect of that proceeding. Where this is so, it can hardly be said that "state law clearly bars the interposition of the constitutional claims." Moore, 442 U.S. at 426, 99 S.Ct. at 2379. Further, in Middlesex County the Supreme Court found that a sufficient opportunity to raise a constitutional claim existed in state administrative disciplinary proceedings where the claim could be asserted in the state supreme court on appeal. 457 U.S. at 436, 102 S.Ct. at 2523. See also Ohio Civil Rights Commission, --- U.S. ----, 106 S.Ct. at 2717-18 (it is sufficient that constitutional claims may be raised in state court judicial review of an administrative proceeding). It is thus not a prerequisite to Younger abstention that a constitutional claim may be raised at any particular stage in a state proceeding. Similarly, that plaintiffs' Rule 3:5-7 motion might be heard by a state judge other than Judge Lenox is insufficient reason to conclude that the state proceedings do not provide adequate opportunity to raise the constitutional claim being asserted by the plaintiffs.
 
 
 54
 Because application of the three-part inquiry outlined in Middlesex County leads ineluctably to the conclusion that Younger abstention is appropriate in this case, the district court did not err in abstaining from adjudicating plaintiffs' claim for injunctive relief unless extraordinary circumstances exist warranting that an exception be made. Id. at 437, 102 S.Ct. at 2524; Younger, 401 U.S. at 53-54, 91 S.Ct. at 754-55. Although plaintiffs argue that they have been harassed and that the investigation into their alleged misconduct is in bad faith, they have provided no support for these assertions. Similarly, they cannot claim that the state is attempting to enforce against them a law that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Watson v. Buck, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941), quoted in Younger, 401 U.S. at 53-54, 91 S.Ct. at 754-55; see also Middlesex County, 457 U.S. at 437, 102 S.Ct. at 2524; Juidice, 430 U.S. at 338, 97 S.Ct. at 1218.
 
 
 55
 Since consideration by a federal court of plaintiffs' fourth amendment claim for injunctive relief in the context of this appeal would constitute an undue interference with New Jersey's important interest in investigating criminal conduct within its borders and in determining whether evidence to be used in that investigation was improperly obtained, I would affirm the district court's decision to abstain as to the request for injunctive relief.
 
 II.
 
 56
 The Supreme Court has stated that "the only pertinent inquiry [in a case raising an issue of Younger abstention] is whether the state proceedings afford an adequate opportunity to raise the constitutional claims." Moore, 442 U.S. at 430, 99 S.Ct. at 2381. In my view, the pending proceeding in New Jersey Superior Court concerning the seizure of plaintiffs' documents provides an adequate forum for the assertion of their fourth amendment claim.
 
 
 57
 Furthermore, the application of Younger abstention in this case is more than an intellectual exercise dealing with the important issues of federalism and comity. The decision whether to abstain in this matter may have considerable consequences for the state proceedings at issue. Under the result reached by the majority, the federal district court will proceed to adjudicate plaintiffs' right to the return of documents that may be crucial to the state grand jury proceeding and criminal investigation. Refusal to abstain here will create a substantial risk of federal-state friction as well as a delay in the criminal investigation. By contrast, under the approach employed by the district court, plaintiffs' fourth amendment claim would be decided in the ongoing state court proceeding along with the privilege issue, thereby eliminating federal intervention in the state investigation and avoiding duplicative litigation.
 
 
 58
 This case provides no occasion for casting aside the interwoven precepts of federalism and equitable jurisdiction that combine to make up the Younger doctrine of non-intervention. Accordingly, I respectfully dissent from that portion of the majority's opinion holding that the district court erred in dismissing plaintiffs' claim for injunctive relief.
 
 
 59
 Statement by Circuit Judge ADAMS Sur Petition for Rehearing in Banc
 
 
 60
 I respectfully dissent from the action of the court today because I believe that the issue posed by this appeal is of sufficient importance to command the attention of the full court.
 
 
 61
 In contrast to the panel's determination that the district judge erred when he declined to interrupt a state grand jury proceeding, recent Supreme Court decisions construing the abstention doctrine have held unswervingly to the principle that federal courts must defer to ongoing state proceedings in a variety of contexts and most especially in a criminal law setting. Thus, in Ohio Civil Rights Comm'n v. Dayton Christian Schools, --- U.S. ----, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), the Supreme Court held that federal tribunals must take into consideration any developments in state court proceedings, even when such developments occur after the filing of the federal complaint. The panel's holding--that post-complaint developments are irrelevant to the question whether to abstain--is therefore contrary to controlling precedent.
 
 
 62
 Further, and equally important, I am persuaded that the issue presented by this appeal is significant both as a matter of federal jurisprudence and as an example of the deference essential to the functioning of a federal system of government. The state court here is fully prepared to adjudicate the constitutional claims raised by the plaintiffs. To permit plaintiffs to invoke the processes of the federal court in such a situation would unduly obstruct state grand jury proceedings and in some cases abort them.
 
 
 
 [1]
 While the search warrant was being executed, some of the defendants served on the plaintiffs four subpoenas duces tecum issued by a state grand jury. The records called for in one of these subpoenas were the same as those listed in the search warrant except that some predated those called for by the warrant. Another subpoena was addressed to the custodian of records of Monaghan Associates. A third contained a hand-written list of titles of file folders examined by the defendants during their eight-hour execution of the warrant; the warrant did not authorize the seizure of any of these folders. A fourth subpoena duplicated one of the other three except for its issue date
 On November 1, 1984 Foundations responded to the first subpoena by producing the documents that it requested and that had not already been seized. Plaintiffs subsequently moved to quash two of the other subpoenas, and the state withdrew them.
 
 
 [2]
 On October 23, 1984 and November 14, 1984 counsel for Foundations and two other representatives of that corporation were allowed access to the sealed boxes for the purpose of making an inventory. During the course of that inventory dozens of documents that are subject to the attorney-client or work-product privileges were identified. Some of these documents were sealed with the consent of a Deputy Attorney General in the Division of Criminal Justice pending a judicial resolution of the validity of claims of privilege
 
 
 [3]
 In their appellate brief the defendants concede this:
 For purposes of this appeal ..., we assume arguendo that the allegations are correct [see Fed.R. of Civ.Proc. 12(b)(6) ] and argue that this Court should affirm the District Court's Order dismissing appellants' claims based upon the abstention doctrine.
 Appellees' Brief at 8 n. 9.
 
 
 [4]
 The plaintiffs argue on appeal that the district court was clearly erroneous in finding as a matter of fact that they were the subject of a New Jersey grand jury investigation. In support of its finding the district court relied upon two sources--an affidavit filed by a Deputy Attorney General of New Jersey's Division of Criminal Justice and a transcript from a New Jersey state court proceeding, but neither of these sources support the finding. However, in light of our resolution of the legal issues presented by this appeal, we do not reach this factual challenge
 
 
 [5]
 In Kaylor v. Fields, 661 F.2d 1177 (8th Cir.1981), the Eighth Circuit suggested that a grand jury investigation is a proceeding for which Younger abstention was appropriate. See id. at 1182. However, in that case, while a criminal charge was pending against one of the two federal plaintiffs, there was no threatened prosecution against the other. Thus the suggestion probably is dictum. In any event the Kaylor opinion offers no analysis of the issue
 
 
 [6]
 A New Jersey grand jury can also return a presentment. N.J.Crim.Prac.R. 3:6-9. A presentment is not even a charge. It affords no opportunity to adjudicate anything, even after it has been filed
 
 
 [7]
 The defendants point to the New Jersey rule that provides that
 [a] person claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the evidence obtained may be used against him in a penal proceeding, may apply to the Superior Court only and in the county in which the matter is pending or threatened to suppress the evidence and for the return of the property seized....
 N.J.Crim.Prac.R. 3:5-7. They contend that the plaintiffs could have applied to the Superior Court Judge who issued the search warrant--the judge who happens also to be the one to whom the state grand jury would return an indictment--for a return of the property. This contention raises several technical problems, not the least of which is that no penal proceeding, so far as the complaint shows, is pending or threatened against any of the plaintiffs. However, even if the rule were inapplicable, the plaintiffs could have brought an action in the Superior Court in the nature of replevin. See N.J.Stat.Ann. Sec. 2A:59-1 (West 1952). Thus there is no question but that relief was (and presumably still is) available in the state court had the plaintiffs chosen to sue there.
 
 
 [8]
 This conclusion obviates the need to address the plaintiffs' alternative contention that abstention was improper because their complaint pleaded bad faith and harassment by the state official defendants
 
 
 [9]
 That is not to say that the plaintiffs' federal case should be left in perpetual limbo. Our affirmance of the denial of a preliminary injunction is without prejudice to its renewal should the state official defendants retain possession of plaintiffs' property and should nothing further transpire before the grand jury
 
 
 [1]
 That rule provides in pertinent part:
 (a) Notice; Time. On notice to the prosecutor of the county in which the matter is pending or threatened, to the applicant for the warrant if the search was with a warrant, and to co-indictees, if any, and in accordance with the applicable provisions of R. 1:6-3 and R. 3:10, a person claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the evidence obtained may be used against him in a penal proceeding, may apply to the Superior Court only and in the county in which the matter is pending or threatened to suppress the evidence and for the return of the property seized even though the offense charged or to be charged may be within the jurisdiction of a municipal court.
 
 
 [2]
 Plaintiffs argue that the district court's finding that there is an ongoing state grand jury investigation was clearly erroneous. However, those state authorities responsible for conducting and supervising the investigation repeatedly represented to the district court that a grand jury was sitting and investigating alleged misconduct by plaintiffs. Furthermore, plaintiffs concede that they have been served with numerous subpoenas and that two of the plaintiffs were informed that they are targets of a grand jury investigation. Since grand jury proceedings must be conducted in secrecy, it is not clear what further evidence would be required to support a finding that such proceedings are taking place