Bobby WATTS, M.D.,
Plaintiff–Appellant,

v.

John H. BURKHART, M.D., et al.,
Defendants–Appellees.

No. 86–5526.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 17, 1987.

Decided Aug. 12, 1988.

William M. Barrick (argued), Nashville, Tenn., David B. Lyons, for plaintiff-appellant.

W.J. Michael Cody, Atty. Gen., C. Blair Scoville (argued), Debra K. Inglis, Kent E. Krause, Brewer, Krause & Brooks, Nashville, Tenn., for defendants-appellees.

Before MARTIN and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Appellant Bobby Watts, a physician licensed to practice medicine in Tennessee, filed this action pursuant to 42 U.S.C. § 1983, seeking to enjoin a pending state administrative proceeding initiated by the Tennessee Division of Health Related Boards (Division) for the purpose of summarily suspending Watts' license to practice medicine. Watts also sought damages on the grounds that the Division and the members of the Tennessee Board of Medical Examiners (Board) had violated the due process and equal protection clauses of the fourteenth amendment. The district court declined to grant an injunction and dismissed Watts' action, finding that the action was subject to the rule enunciated in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Watts raises several challenges to the dismissal of his action. He first contends that the *Parratt* rule is inapplicable because the deprivation in this case occurred pursuant to an established state procedure rather than by random and unauthorized conduct. Watts secondly argues that even if *Parratt* applies, the available state remedies are inadequate to satisfy due process. Watts lastly asserts that regardless of whether the district court acted properly with regard to his section 1983 due process claim, it erred in dismissing his equal protection claim also brought under section 1983. At oral argument, the issue of abstention was raised and the parties were requested to submit supplemental briefs addressing the issue of the applicability of the principles of abstention to the instant case. For the following reasons, we affirm the dismissal of appellant's equitable claims and reverse the dismissal of his claims for monetary relief and attorney's fees.

I.

The vast majority of Watts' practice as a physician has involved administering weight-loss programs through which he has prescribed federally-controlled drugs. Watts possesses an authorization number issued by the Federal Drug Enforcement Agency (DEA), permitting him to prescribe controlled substances.

On October 21, 1985, the Division, a Tennessee administrative agency, issued a "Notice of Charges" against Watts, charging him with violating various provisions of Title 63, Chapter 6, of the Tennessee Revised Code, §§ 63–6–101 *et seq.* The Division specifically alleged that Watts had violated sections 63–6–214(a)(1)–(4), (12)–(14), by prescribing or otherwise distributing controlled substances when they are not medically indicated, by prescribing or otherwise distributing controlled substances in a manner constituting gross negligence, and by prescribing or otherwise distributing controlled substances to persons addicted to the habit of taking such substances. The Division notified Watts that it would present these charges to the Board at a hearing on October 30, 1985, and would request the Board at that time to summarily suspend Watts' license to practice medicine pending further inquiry into whether his license should be permanently revoked. The Division also informed Watts that he was entitled, if he desired, to be represented by counsel at the initial hearing.

Watts appeared before the Board on October 30, 1985, without counsel. After hearing the charges, Watts signed a document by which he agreed to voluntarily surrender his DEA authorization number in lieu of having his license to practice medicine summarily suspended pending a subsequent hearing and final disposition. Accordingly, Watts retained his license to practice but he could not prescribe federally-controlled substances. Watts subsequently demanded the return of this "voluntary surrender," however, on the ground that he had been coerced into signing it.

On December 7, 1985, the Board issued an order concerning the October 30, 1985 hearing. The order clarified that since Watts had signed a "voluntary surrender" of his federal prescription privileges, the original motion for summary suspension of his license to practice medicine was "not taken up for ruling by the Board" at the hearing.

In response to Watts' communication of his desire to withdraw his "voluntary surrender" of his DEA authorization number, the Division filed a motion with the Board to summarily suspend Watts' license to practice medicine in Tennessee. Watts received notice on December 19, 1985, that the Division had filed the motion. A hearing on the motion to suspend Watts' license was set for January 14, 1986.

Before the summary suspension hearing was held, Watts filed the instant action under 42 U.S.C. § 1983, naming as defendants the Division and individual members of the Board. Watts alleged violation of his due process and equal protection rights as protected by the fourteenth amendment and sought damages and attorney's fees. He also sought to enjoin the pending administrative proceedings, alleging that the Division and the Board intended to proceed in the same "vague" manner as they had at the hearing on October 30, 1985. Watts contended that the original notice issued by the Division was insufficient and that the manner in which the October 30 hearing was held failed to meet minimum requirements of due process and state administrative law.

The district court initially denied Watts' request for a temporary restraining order, but only upon receiving the parties' stipulation to maintain the status quo until the court could hold a hearing. In a subsequent order, dated February 28, 1986, the court denied Watts' request for a preliminary injunction. The court later amended that order in part in order to grant Watts' request to prohibit the defendants from enforcing the "voluntary surrender" which he had signed.

On April 8, 1986, the district court issued an order granting the defendants' motion to dismiss Watts' action. The court preliminarily observed that Watts had stated a cause of action under section 1983, since the conduct complained of was taken under color of state law and Watts had alleged the deprivation of a right, privilege, or immunity protected by the Constitution or laws of the United States. The court then dismissed the Division from the law suit on the ground that it was immune from Watts' damages claims as a state agency. Watts had expressly agreed to the dismissal of the Division.

The remainder of Watts' action was dismissed pursuant to the rule developed in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), foreclosing procedural due process actions brought under section 1983 where the state provides adequate postdeprivation remedies. The court concluded that the remedies available to Watts under the Tennessee Uniform Administrative Procedures Act, Tenn.Code Ann. §§ 4–5–101 *et seq.*, were sufficient to satisfy due process. Accordingly, the court found that Watts' section 1983 action was improper and had to be dismissed. Watts pursued this timely appeal from that dismissal.

At oral argument before this court, the parties were requested to file supplemental briefs addressing the applicability of the abstention principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), as recently examined in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). After reviewing the

supplemental briefs, this court held the instant case in abeyance pending the Supreme Court's disposition in *Monaghan v. Deakins*, 798 F.2d 632 (3d Cir.1986), *cert. granted*, 479 U.S. 1063, 107 S.Ct. 946, 93 L.Ed.2d 996 (1987). *Deakins* was decided by the Court on January 12, 1988. *Deakins v. Monaghan*, —— U.S. ——, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). Supplemental briefs were submitted addressing the applicability of *Deakins* to the instant case.

This case presents two issues. The first issue involves the propriety of the district court's dismissal based on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed. 2d 420 (1971). The second issue, which was not addressed by the district court but was thoroughly briefed by the parties, involves the applicability of the abstention principles to the instant case.

## II.

### A.

▪ Watts asserts that the district court erred in dismissing his equal protection claims, since *Parratt* only applies in the procedural due process setting. Watts' assertion is well taken, since *Parratt* is not applicable to claims based on a right, privilege, or immunity secured by the Constitution or federal laws other than the due process clause of the fourteenth amendment. *See Hayes v. Vessey*, 777 F.2d 1149, 1152 (6th Cir.1985), (quoting *Wilson v. Beebe*, 770 F.2d 578, 585 (6th Cir.1985) (en banc)). *See also Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir.1984) (*Parratt* is irrelevant if the plaintiff alleges a violation of a substantive right protected by the Constitution). Since *Parratt* is not applicable to claims based on substantive rights protected by the Constitution, the district court erred in dismissing Watts' equal protection claim under *Parratt*.

As to Watts' other claims, the district court recognized that Watts seems to at least facially raise a sufficient section 1983 action. The actions taken by the Division and the Board were undisputably done under color of state law. Also, the conduct allegedly deprived Watts of constitutionally protected rights. The conduct jeopardized Watts' license to practice medicine and impinged upon his right to practice medicine. This circuit has recognized that the freedom to pursue a career is a protected liberty interest, and that state regulation of occupations through a licensing process gives rise to protected property interests. *See, e.g., Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir.1983). The Tennessee Supreme Court has also specifically stated that the right to practice medicine is a constitutionally protected property right which cannot be illegally deprived. *State Board of Medical Examiners v. Friedman*, 150 Tenn. 152, 263 S.W. 75 (1924). Furthermore, the conduct which Watts complains of is intentional, not merely negligent, conduct and thus can constitute a deprivation actionable under section 1983. Accordingly, the holding of *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), barring section 1983 actions based on negligent conduct which has injured a protected interest, is not applicable in this case.[1] Thus, Watts appears at first glance to have sufficiently stated a section 1983 claim. The district court concluded, however, that the additional limitation on the availability of section 1983 relief in procedural due process cases enunciated in *Parratt* destroys the viability of Watts' action.

In *Parratt*, the court held that procedural due process is not violated when a state employee negligently deprives an individual of property if the state provides an adequate postdeprivation remedy. The Court reasoned that in situations where predeprivation process is not feasible, such as where quick state action is essential, or where the loss of property is caused by random and unauthorized conduct, postdeprivation state remedies will satisfy due process concerns. 451 U.S. at 539, 541, 101 S.Ct. at 1914–15, 1916.

---

1. In *Daniels,* the Court held that the "due process clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Daniels,* 474 U.S. at 328, 106 S.Ct. at 663 (emphasis in original).

The Court has extended the *Parratt* limitation to instances of intentional, yet unauthorized, deprivation of a property right. In *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court held that the rationale underlying *Parratt* concerning the impracticability of predeprivation procedure under certain circumstances is equally applicable to intentional deprivations of property since a state "can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct." *Id.* at 533, 101 S.Ct. at 1911–12.

■ This circuit has even further extended *Parratt's* limitation on section 1983 actions by applying it to claims of deprivation of a liberty interest without procedural due process. *See Wilson v. Beebe*, 770 F.2d 578, 585 (6th Cir.1985) (en banc) (while noting split in circuits on issue, concluding that *Parratt's* rationale does not require a distinction between due process claims for deprivations of property and liberty). Thus, Watts' allegations of deprivation of both property and liberty interests do not vitiate *Parratt's* applicability.

■ As a result of *Parratt*, this circuit in *Vicory v. Walton*, 721 F.2d 1062, 1065–66 (6th Cir.1983), *cert. denied*, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984), imposed upon plaintiffs bringing section 1983 procedural due process actions the burden of pleading and proving "that state remedies for redressing the wrong are inadequate." The failure to so plead in this circuit, therefore, renders a section 1983 complaint subject to dismissal. This is what the district court relied on in dismissing Watts' complaint, since the court believed that the state review procedures were adequate and Watts had not shown otherwise.

Watts argues that application of *Parratt* in this case was improper because the state

was in a position to provide, and in fact did provide, predeprivation process. The rule of *Parratt* and *Vicory* is clearly inapplicable "where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized conduct." *Hudson*, 468 U.S. at 532, 104 S.Ct. at 3203 (footnote omitted). The Supreme Court has expressly refused to extend *Parratt* to such situations. *See, e.g., Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed. 2d 265 (1982) (*Parratt* "was not designed to reach ... a situation" where the deprivation is the result of an established state procedure). This circuit likewise has expressly refused to apply *Parratt* or *Vicory*, when faced with a case alleging a deprivation of property resulting from application of an established state process. *See, e.g., Spruytte v. Walters*, 753 F.2d 498, 509–10 (6th Cir.1985) (adequacy of state postdeprivation procedures is irrelevant where deprivation was caused by application of prison policy directive), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986).[2]

■ Since any predeprivation actions taken in the instant case were done pursuant to established state procedures, the district court erred in applying *Parratt*. In reaching this conclusion, we are not swayed by the appellees' argument that any conduct by the state actors which violated due process was necessarily random and not authorized since the state procedures on their face comport with due process. The relevant state action in the instant case is the state agency's deliberate decision to obtain either the voluntary surrender of Watts' DEA authorization or the summary suspension of Watts' license, which was done under established state procedure; the focus is not on the possibly random actions taken in carrying out the state procedures. Furthermore, we are unconvinced that the instant case presents

---

2. Since Watts does not complain that he was deprived of his license without due process as the result of a random and unauthorized act by the Board, we do not find the Second Circuit's opinion in *Marino v. Ameruso*, 837 F.2d 45 (2d Cir.1988) applicable, since the *Marino* court merely reaffirmed the principle that those who claim that a property right was lost because of a random and unauthorized act by a state actor must show that state procedural remedies are inadequate.

the other exception discussed in *Parratt* where a state may deprive a protected property or liberty interest without providing predeprivation process when it is essential for the state to take quick action. *Parratt,* 451 U.S. at 539, 101 S.Ct. at 1914–15. As the Supreme Court has observed, the "controlling inquiry" in determining the applicability of *Parratt* "is solely whether the state is in a position to provide for predeprivation process." *Hudson,* 468 U.S. at 534, 104 S.Ct. at 3204. Not only was the state in the instant case in a position to provide predeprivation process, but it actually provided process in the form of notice and a hearing.[3] Thus, *Parratt* clearly does not apply and the district court erred in concluding that it did.

Our conclusion that the district court erred in dismissing Watts' claims under *Parratt* does not end the analysis, however, since we are left with the question of abstention.

### B.

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court held that federal courts should not enjoin pending state criminal proceedings begun prior to the institution of a federal suit except in the very unusual situation where an injunction is necessary to prevent both immediate and great irreparable injury. *Id.* at 46, 91 S.Ct. at 751. The Court grounded its decision on principles of equity and on notions of comity, to which it gave the name, "Our Federalism." According to the Court, "Our Federalism" represents "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44, 91 S.Ct. at 750. In light of its concern with principles of comity and federalism, the Court emphasized that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* at 45, 91 S.Ct. at 751. Thus, *Younger* established the principle that in cases seeking to enjoin ongoing state criminal proceedings, federal courts should not exercise jurisdiction but instead should dismiss the cases in their entirety. *See Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (*Younger* abstention "contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts").

The Court subsequently recognized in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), that the principles expressed in *Younger* with regard to pending criminal proceedings apply with equal force to certain ongoing state civil proceedings. In *Huffman,* the Court held that federal courts should not entertain challenges to pending state court proceedings where intervention would improperly impinge on important state interests, except under the exceptional circumstances recognized in *Younger* where the state proceeding is pursued with an intent to harass, is conducted in bad faith, or where the challenged state statute or authority is flagrantly and patently unconstitutional. *Id.* at 603–13, 95 S.Ct. at 1207–13.

The Court has also approved application of *Younger* abstention to situations involving state administrative proceedings. Thus, in *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Court held that federal courts should abstain from interfering with lawyer disciplinary proceedings brought by a state ethics committee and subject to review by the state supreme court. *Id.* at 437, 102 S.Ct. at 2524. *Middlesex* highlighted that the pertinent inquiries for de-

---

**3.** One of the appellees argues that the process afforded Watts comported with the minimum requirements of the due process clause and that Watts therefore cannot maintain his section 1983 action. This argument is not properly before this court, however, since it goes to the merits of Watts' due process claims and not to whether the claims were properly dismissed pursuant to *Parratt. See Lanier v. American Bd. of Endodontics,* 843 F.2d 901 (6th Cir.1988).

termining whether *Younger* abstention should be applied in a particular case are: (1) whether state proceedings, including administrative actions, are pending; (2) whether those proceedings involve important state interests; and (3) whether the federal plaintiff will be afforded an adequate opportunity to raise his constitutional claims in those state proceedings. *Id.* at 432, 102 S.Ct. at 2521. As the Court reiterated in *Middlesex*, "[w]here vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'" *Id.* (quoting *Moore v. Sims*, 442 U.S. 415, 426, 99 S.Ct. 2371, 2379, 60 L.Ed. 2d 994 (1979)).

The Court recently discussed *Younger* abstention in *Ohio Civil Rights Commission v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). There, a private religious school brought an action under section 1983, seeking to enjoin the Ohio Civil Rights Commission from pursuing a sex discrimination complaint brought by a female teacher discharged by the school, on the ground that such action would violate the free exercise and establishment clauses of the first amendment. The Court concluded that the district court, which declined to issue the injunction, should have abstained under *Younger* from exercising jurisdiction over the case. The Court preliminarily observed that it had applied *Younger* abstention "to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Id.* at 627, 106 S.Ct. at 2723. The Court then found that *Younger* indeed governed the case before it because the state administrative action was pending, the state had an important interest in eliminating prohibited sex discrimination, and the federal plaintiff would have an adequate opportunity to raise its constitutional claims. *Id.* at 628, 106 S.Ct. at 2723. In rejecting the school's argument that the state administrative proceedings would not afford the opportunity to raise constitutional claims, the Court observed that it was sufficient "that constitutional claims may be raised in state court judicial review of the administrative proceeding." *Id.* at 629, 106 S.Ct. at 2723–24. Since the school had cited no authority indicating that constitutional challenges could not be asserted in the expressly authorized state judicial review of decisions of the Ohio Civil Rights Commission, the Court concluded that there existed an adequate opportunity to assert such claims.

In *Deakins v. Monaghan*, — U.S. —, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988), the plaintiffs brought a section 1983 action seeking equitable relief, compensatory and punitive damages, and attorney's fees for alleged violations of their constitutional rights. Their federal claims arose out of an ongoing grand jury investigation. The district court dismissed the action on abstention grounds and denied the plaintiff's motion for injunctive relief. The Court of Appeals for the Third Circuit reversed the dismissal of the complaint. After ruling that the abstention doctrine did not require the district court to abstain from adjudicating the plaintiff's claim for injunctive relief arising out of an ongoing grand jury investigation, the court also held that the district courts, when abstaining from adjudicating a claim for injunctive relief, should stay rather than dismiss accompanying claims for monetary relief and attorney's fees when such relief is not available from the ongoing state proceeding. The court noted that the availability of a separate state tribunal in which the monetary claims could be brought did nothing to lessen the district court's obligation to retain jurisdiction over claims properly before it. *See Monaghan v. Deakins*, 798 F.2d 632, 635–36 (3d Cir.1986).

The Court granted certiorari to consider whether the district court was required to abstain from adjudicating the plaintiff's claim for injunctive relief, and whether the court had the discretion to dismiss, rather than stay, plaintiff's additional claims for damages and attorney's fees. While the case was pending, the plaintiffs expressed a willingness to withdraw their equitable claims, thereby rendering moot the ques-

tion of whether the district court was required to abstain from adjudicating the claims for equitable relief.

The Court reached the second issue, however, and found the Third Circuit's rule to be sound and held that the district court has no discretion to dismiss rather than stay claims that are not cognizable in the parallel state proceeding. *Deakins*, 108 S.Ct. at 530.

We find that the principles enunciated in the cases discussed above govern the instant case, since the three pertinent factors emphasized in *Middlesex* are present, and the extraordinary circumstances under which *Younger* abstention should not apply are not present.

The first predicate for applying the *Younger* principles is met here, since the state administrative action brought by the Division of Health Related Boards is still pending. The Division first initiated the proceedings when it filed on October 21, 1985, the notice of charges against Watts, notifying him of the initial hearing in which the Division planned to request the Board of Medical Examiners to summarily suspend Watts' license to practice medicine. The notice was filed and the ensuing preliminary hearing was held pursuant to Tenn.Code Ann. § 4–5–320(c), which governs proceedings affecting licenses. Section 4–5–320(c) provides:

> No revocation, suspension, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action.

These proceedings shall be promptly instituted and determined.

Grounds upon which the Board can suspend a physician's license to practice in a proceeding brought under section 4–5–320(c) are set forth in Tenn.Code Ann. § 63–6–214.

In the instant case, the Board did not initially suspend Watts' license; Watts instead signed the "voluntary surrender" of his DEA authorization number in lieu of having his license suspended. Once Watts did so, the charges leveled against him were held in abeyance pending a subsequent, final determination concerning revocation of his license as contemplated by section 4–5–320(c). However, when Watts revoked his surrender of his DEA authorization number, it again became necessary for the Division to seek summary suspension of his license to practice. To do so, the Division did not need to file new charges against Watts, since it had already filed the notice of the charges required by section 4–5–320(c), but instead merely had to notify Watts that it had filed a motion with the Board to summarily suspend Watts' license on the grounds set forth in the initial notice. Upon receiving a copy of the Division's motion, Watts filed the instant action seeking to enjoin the license suspension and revocation proceedings. While the district court declined to enjoin those proceedings, it did receive the parties' stipulation that they would maintain the status quo; that is, that the proceedings would be held in abeyance. Thus, the license suspension and revocation proceedings, which are directly related to the initial notice of charges brought against Watts, are still pending.[4]

The second factor for applying *Younger* abstention is also met in this case, since a vital state interest is clearly involved. The charges brought against Watts alleged that he was improperly distributing or prescribing controlled substances in violation of the provisions of Tenn.Code Ann. § 63–6–214. It is readily apparent that the State of

---

4. In their most recently filed supplemental briefs, the parties dispute the existence of an ongoing state proceeding. Given the previous stipulations of the parties, we will proceed with the presumption that there is a pending state proceeding. We leave the ultimate determination of this factual question to the district court.

Tennessee has an important interest in protecting its citizens from the illegal and improper distribution of controlled substances and from the negligence of licensed physicians. The Tennessee courts have long upheld the constitutionality of the regulation of medicine, and have repeatedly upheld the constitutionality of the statutes which regulate medicine and physicians. Tenn.Code Ann. §§ 63–6–101 *et seq. See, e.g., Campbelle v. Hobbs,* 124 S.W.2d 699 (Tenn.1939); *O'Neil v. State,* 90 S.W. 627 (Tenn.1905). The Tennessee Supreme Court has also specifically upheld the state's ability to license physicians and regulate their practice as a valid exercise of the state's police power. *Davis v. Beeler,* 207 S.W.2d 343 (Tenn.1947), *appeal dismissed,* 333 U.S. 859, 68 S.Ct. 745, 92 L.Ed. 1138 (1948). Furthermore, states are traditionally accorded leeway in adopting procedures to protect public health and safety. *Mackey v. Montrym,* 443 U.S. 1, 17, 99 S.Ct. 2612, 2620, 61 L.Ed.2d 321 (1979).

In light of these pronouncements and principles, we believe that the State of Tennessee's interest in regulating the prescription and distribution of controlled substances by licensed physicians is as important as a state's interest in ensuring the professional conduct of licensed attorneys. The Supreme Court in *Middlesex* recognized that states have an important interest in, and have traditionally exercised extensive control over, the professional conduct of attorneys. 457 U.S. at 434–35, 102 S.Ct. at 2522–23. We see no reason to believe that states have any less vital an interest in controlling the professional conduct of state-licensed physicians. We therefore conclude that the pending administrative proceedings in the present case involved the type of important state interests which render applicable the principles of *Younger* abstention.

We finally turn to the third pertinent inquiry governing whether the principles of *Younger* should apply—whether there exists an adequate opportunity for Watts to raise his constitutional claims in the state proceedings. Pursuant to Tenn.Code Ann. § 63–6–216, any proceeding for disciplinary action taken against licensed physicians under Tennessee law must be conducted in accordance with Tennessee's Uniform Administrative Procedures Act, Tenn.Code Ann. §§ 4–5–101, *et seq.* The provisions of that statute show that Watts may have two alternative avenues of state judicial review open to him. First, pursuant to Tenn.Code Ann. § 4–5–322(a)(1), Watts could seek judicial review of a final decision of the Board of Medical Examiners revoking his license to practice medicine.[5] In the alternative, Watts could seek, under Tenn.Code Ann. § 4–5–322(a)(2), immediate judicial review of a preliminary decision of the Board to summarily suspend his license pending a final decision, if he could show that review of the later, final decision would be inadequate.[6] Obtaining judicial review pursuant to either of these provisions is accomplished by filing a petition for review in the chancery court. *See United Inter–Mountain Tel. Co. v. Public Serv. Comm'n,* 555 S.W.2d 389, 391 (Tenn.1977). The chancery court is empowered to "reverse or modify" an administrative agency's decision if the decision: (1) violates constitutional or statutory provisions; (2) exceeds the agency's statutory authority; (3) is a result of unlawful procedures; or (4) is arbitrary, capricious, or an abuse of discretion. Tenn. Code Ann. § 4–5–322(h). Thus, the statute governing the scope of review expressly contemplates that a petitioner will be afforded the opportunity to raise constitutional issues, such as Watts' claims of lack of due process, and state statutory arguments, such as those raised by Watts concerning the manner in which the initial hearing before the Board was conducted. Accordingly, it appears that Watts will be provided a full and fair opportunity to liti-

**5.** Section 4–5–322(a)(1) provides in full:

A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review.

**6.** Section 4–5–322(a)(2) provides in full:

A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

gate his constitutional claims in the course of the state proceedings.

■ Watts contends that he will not be permitted to assert his constitutional claims in the administrative proceedings before the Board. This contention is supported by the record, which shows that after Watts asserted his constitutional claims as affirmative defenses to the Division's motion to summarily suspend his license, the Division successfully brought a motion to strike those defenses on the ground that they were not within the scope of review of proceedings before the Board of Medical Examiners. This fact alone does not, however, establish that Watts will be deprived of an opportunity to present his constitutional claims. In *Dayton Christian Schools,* the Supreme Court stated that "it is sufficient ... that constitutional claims may be raised in state court judicial review of the administrative proceeding." 477 U.S. at 629, 106 S.Ct. at 2724. The Division acknowledged, in its motion to strike filed with the Board, that Watts' constitutional claims could be presented in the chancery court on review and Watts is unable to direct this court to any Tennessee authority indicating that this is not the case. Therefore, we are unpersuaded that Watts will not have an adequate opportunity to raise his constitutional claims at some point in the state proceedings.

■ Having found that all three of the predicates for application of *Younger* abstention are present in this case, we are led to the conclusion that absent a showing of bad faith, harrassment, or flagrant unconstitutionality, the district court should not have exercised jurisdiction over this case. Watts has made no showing that the type of extraordinary circumstances which render *Younger* abstention inappropriate exist in this case. We therefore hold that the district court should have abstained from exercising jurisdiction under the principles of *Younger v. Harris.*

A review of the decisions in analogous Supreme Court cases reveals the correctness of our conclusion. In *Geiger v. Jenkins,* 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971), the Court summarily affirmed, citing to *Younger,* the dismissal of a section 1983 action brought by a medical practitioner against the State Medical Board of Georgia seeking to enjoin the Board's pursuit of charges against him. Subsequently, in *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), the Court acknowledged that it is "apparent from *Geiger* that administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings." *Id.* at 576–77, 93 S.Ct. at 1696–97. *Gibson* involved a section 1983 action brought by state-licensed optometrists to enjoin disciplinary proceedings initiated against them by the Alabama Board of Optometry. Although the Supreme Court declined to apply *Younger* abstention in *Gibson,* it did so on grounds not present in the instant case. That is, the Court found that a necessary predicate for *Younger* dismissal, "the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved," was lacking because the State Board of Optometry was unconstitutionally incompetent due to bias. *Id.* at 577, 93 S.Ct. at 1697. As we have already found, none of the *Younger* predicates are lacking in the present case; therefore, our conclusion is completely reconcilable with that in *Gibson.* It is also fully consistent with the Supreme Court's decision under analogous circumstances in *Middlesex,* 457 U.S. 423, 102 S.Ct. at 2515. There, a District Ethics Committee served a formal statement of charges upon a state-licensed attorney, alleging violation of certain disciplinary rules, and the attorney reacted by filing suit in federal court alleging that the state's disciplinary rules violated his first amendment rights. The Supreme Court held that abstention was proper under those circumstances, thereby declining to permit federal court interference with the ongoing state disciplinary proceedings. 457 U.S. at 437, 102 S.Ct. at 2524. Finally, the Supreme Court's recent pronouncements on *Younger* abstention in *Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, convince us that application of the *Younger* principles is called for in the

present case. *Dayton Christian Schools* and the instant case are analogous in that the plaintiffs in each case filed section 1983 actions seeking to enjoin on constitutional grounds pending state administrative proceedings initiated against the plaintiffs.

We are not swayed from our convictions by the Fifth Circuit's recent decision in *Thomas v. Texas State Board of Medical Examiners*, 807 F.2d 453 (5th Cir.1987). In *Thomas*, the Texas Board of Medical Examiners revoked a physician's medical license. The physician subsequently sought state court review of his license revocation, but then dismissed the state suit and brought a section 1983 action in federal court alleging in part that the revocation proceedings violated his procedural due process rights and state administrative law. The district court abstained from exercising jurisdiction, relying on *Younger*. On appeal, the Fifth Circuit concluded that abstention was improper. Although the court acknowledged that the *Dayton Christian Schools* case seemed to support the district court's decision to abstain, it ultimately distinguished *Dayton Christian Schools* on the grounds that state proceedings were no longer pending and that the plaintiff had not sought to enjoin or interfere with any state proceedings or trial. In light of these distinctions, the court concluded that the concerns expressed in *Dayton Christian Schools* were not present and that the case was inappropriate for application of *Younger* abstention. *Id.* at 455–56.

*Thomas* is inapposite to the instant case, however, because neither of the above distinctions are present. As we have previously noted, the state proceedings initiated against Watts are pending[7] and Watts seeks to enjoin those proceedings. Thus, this case differs significantly from *Thomas* and is controlled instead by the concerns most recently expressed in *Dayton Christian Schools*.

■ Based on our conclusion that the principles of abstention are applicable to this case, we hold that the district court did not err in dismissing Watts' equitable claims. However, the dismissal of his claims for monetary relief and attorney's fees should have been stayed rather than dismissed unless they can be redressed in the state proceeding. *See Deakins*, 108 S.Ct. at 529. Since Watts could not seek redress for his monetary claims or claim for attorney's fees in the chancery court, *see* Tenn.Code Ann. § 4–5–322(b), and since the availability of a separate state forum in which the monetary claim[8] could be brought does nothing to lessen the district court's obligation to retain jurisdiction over the claims properly before it, the district court erred in dismissing Watts' claims for monetary relief and attorney's fees.

Accordingly, we AFFIRM the district court's dismissal of Watts' equitable claims, REVERSE the dismissal of his claims for monetary relief and attorney's fees, and REMAND to the district court for further proceedings consistent with this opinion.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

I agree that the district court erred in dismissing Dr. Watts' equal protection claim. The amended complaint avers, in essence, that the members of the Tennessee Board of Medical Examiners required the doctor to give up his federal license to prescribe controlled substances not because he was dispensing such substances with too liberal a hand, but because he is black. For purposes of the motion to dismiss—a motion filed under Rule 12(b) of the Federal Rules of Civil Procedure—the allegations of the complaint must be accepted as true. To turn the laws against a person because of his race, as the board members are said to have done here, is to deny that person the equal protection of the laws; and it was to redress precisely such conduct by persons acting under color of state law that the reconstruction Congress of 1871, re-

---

**7.** *See supra* pp. 846–48 & note 3.

**8.** Appellees argue that Watts could have maintained his section 1983 action in state court.

*See Poling v. Goins,* 713 S.W.2d 305, 306 (Tenn. 1986).

sponding to a message from President Grant, enacted the legislation now codified at 42 U.S.C. § 1983. See *Monroe v. Pape*, 365 U.S. 167, 171–85, 81 S.Ct. 473, 475–83, 5 L.Ed.2d 492 (1961). If the Board of Medical Examiners believed that Dr. Watts was guilty of malpractice in the way he dispensed diet pills, I see nothing wrong in the board's telling him that his medical license would be suspended unless he voluntarily surrendered his federal license. Should Dr. Watts succeed in proving that the Board of Medical Examiners made him surrender his license because of his race, however, and not because of the way he was practicing medicine, he would be entitled, under § 1983, to a federal court judgment for his damages. And it would be no answer that Tennessee also has a law under which relief would be available. In addition to the authorities cited on this point in the majority opinion, see *Monroe v. Pape*, 365 U.S. at 183, 81 S.Ct. at 481–82, and *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (exhaustion of state administrative remedies is not required in federal actions brought under § 1983).

I have difficulty, however, with the majority's conclusion that the district court erred in dismissing Dr. Watts' claim that he was entitled to redress under § 1983 for the alleged deprivation of property without due process of law. It is well settled that "in section 1983 damage suits for deprivation of property without procedural due process the plaintiff has the burden of pleading and proving the inadequacy of state processes, including state damage remedies to redress the claimed wrong." *Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir.1983), *cert. denied*, 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984); *cf. Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (because of the availability of state tort remedies, random destruction of prisoner's property by state prison officials, even if intentional, did not violate the Due Process Clause of the Fourteenth Amendment). As the Court of Appeals for the Second Circuit declared in *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir.1988), "[a]lthough one need not exhaust state remedies before bringing a Section 1983 action claiming a violation of procedural due process, one must nevertheless prove as an element of that claim that state procedural remedies are inadequate."

Dr. Watts alleged, in his amended complaint, that he had no adequate remedy under state law, but the district court held that this was not so. I am not prepared to say that the district court's reading of Tennessee law was erroneous.

In his original complaint, Dr. Watts made no allegation that he lacked an adequate remedy under state law. The defendants, in their motion to dismiss, pointed out that under *Hudson v. Palmer, supra,* and *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), "a plaintiff must allege that state remedies are inadequate to provide post-deprivation relief." Dr. Watts thereupon moved to amend his complaint by adding, among other things, the following paragraph:

"The plaintiff has no adequate remedy pursuant to state law. He has attempted to assert constitutional defenses in administrative proceedings regarding his license and has been denied. He seeks injunctive relief and punitive damages not readily available. His remedy, if any, would be before the defendant Board Members who are alleged to have violated his constitutional rights."

The district court granted the motion to amend, but held that the remedies available under Tennessee law barred the § 1983 action. Insofar as the § 1983 action was based on an alleged violation of the Due Process Clause, I think the district court was correct.

As to Dr. Watts' plea that the Board of Medical Examiners forced him to surrender his license without allowing him to assert constitutional defenses, the district court pointed out that Tennessee's Uniform Administrative Procedures Act, Tenn.Code Ann. §§ 4–5–101, *et seq.*, made the Board's action "immediately reviewable" in a state chancery court. Tenn.Code Ann. § 4–5–322(a)(2). Chancery court review, as the district court noted, "allows for the court to 'reverse or modify' the agency's

action if such action is '[i]n violation of constitutional or statutory provisions.'" Tenn.Code Ann. § 4–5–322(h). Accordingly, as Judge Contie has written for this court, "it appears that Watts will be provided a full and fair opportunity to litigate his constitutional claims in the course of the state proceedings."

As to Dr. Watts' suggestion that injunctive relief is not "readily available" under state law, the statute provides that the chancery court not only has the power to "reverse or modify" the action of the Board of Medical Examiners, but that it has "all the powers, privileges, and jurisdiction properly and rightfully incident to a court of equity." Tenn.Code Ann. § 16–11–101. The power to grant injunctive relief is, of course, a power that courts of equity—or chancery courts, to use the nomenclature that Tennessee borrowed from England by the way of North Carolina—have possessed for centuries.

As far as the power to award damages is concerned, Dr. Watts has invited our attention to *Chamberlain v. Brown*, 223 Tenn. 25, 442 S.W.2d 248 (1969), where the Tennessee Supreme Court held that state courts need not entertain actions brought under 42 U.S.C. § 1983. To the extent that *Chamberlain* held that state courts may not or should not exercise jurisdiction in such cases, the decision was expressly overruled in *Poling v. Goins*, 713 S.W.2d 305 (1986). Left untouched by *Poling*, however, was the Tennessee Supreme Court's statement in *Chamberlain* that

> "In the very proceeding filed by plaintiff for mandamus to compel defendants to renew plaintiffs [sic] license a Chancery Court could go further and decree to plaintiff damages to which he might be entitled by reason of any unlawful conduct on the part of defendants." 223 Tenn. at 35, 442 S.W.2d 252.

As the district court pointed out, moreover, "under Tennessee's Equal Access to Justice Act of 1984, Tenn.Code Ann. §§ 29–37–101, *et seq.*, a 'court having jurisdiction ... over an action for judicial review brought pursuant to § 4–5–322, may award reasonable and actual fees and other expenses not to exceed ten thousand dollars ($10,000) to the prevailing party.'"

I do not know whether Dr. Watts is correct in his contention that the chancery court lacks power to award punitive damages, but the United States Supreme Court has made it clear that the unavailability of punitive damages under state law "does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt v. Taylor, supra,* 451 U.S. at 544, 101 S.Ct. at 1917.

Dr. Watts has pleaded, finally, that his state remedy is inadequate because the remedy "would be before the defendant Board Members who are alleged to have violated his constitutional rights." With regard to the deprivation that is alleged to have occurred already, however, the remedy lies in the Tennessee courts, not the Board of Medical Examiners. With regard to any future suspension or revocation of Dr. Watts' license, an opportunity to be heard by the board is mandated by statute, absent a finding "that public health, safety or welfare imperatively requires emergency action," Tenn.Code Ann. § 4–5–320(c), and some opportunity to address the board would seem to be required by the very constitutional provision on which Dr. Watts relies. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). If the members of the board are so biased as to make that opportunity essentially meaningless—and I do not intend to suggest that this is so, of course—the place to ferret out such bias is in post-termination proceedings before the chancery court. See *Duchesne v. Williams,* 849 F.2d 1004, 1008 (6th Cir. 1988) (*en banc*).

It remains to me only to say that I have seen nothing in the Tennessee statutes or in the record of this case that would authorize the members of the Board of Examiners or anyone else to deprive Dr. Watts of his license other than by due process of law. I do not believe this case is governed by *Logan v. Zimmerman Brush Company,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), where an agency of the State of Illinois conducted itself in such a way that

under state law it was impossible for the plaintiff ever to present a presumptively valid discrimination claim before a court of law. Neither do I believe that the present case is governed by *Spruyette v. Walters,* 753 F.2d 498 (6th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986), where the Michigan Department of Corrections had adopted a written Policy Directive which, on its face, eviscerated a federally protected property interest. No such policy directive or law is complained of in the case at bar.

Dr. Watts does not contend that there is anything wrong with the administrative scheme Tennessee has established for policing the medical profession; on the contrary, his complaint sets forth a long list of specifics in which the requirements of the established state procedure are alleged to have been violated. If a rogue board of medical examiners deliberately abused established procedures in forcing Dr. Watts to give up his license, Tennessee has hardly deprived Dr. Watts of his property "without due process of law" if it allows the doctor to call the members of the board to account in the Tennessee courts.

I cannot reconcile the majority opinion in this case with the opinion Judge Winter, of the Second Circuit, wrote in *Marino v. Ameruso,* 837 F.2d 45, *supra.* In that case a state administrative law judge deprived the plaintiff of a property interest after administrative proceedings that were assumed to be tainted by error of constitutional magnitude. The plaintiff made no claim that such error was authorized under established state procedure, and state law provided for judicial review of administrative agency error. Absent a showing of inadequate state procedures, the *Marino* court held that there was no due process claim to be asserted under § 1983. I agree with *Marino,* and insofar as this court's reasoning is inconsistent with it, I respectfully dissent.