Robert L. ALEXANDER, M.D., Plaintiff,

v.

Phillip M. MARGOLIS, M.D., et al., Defendants.

No. 1:93–CV–585.

United States District Court, W.D. Michigan, Southern Division.

Nov. 1, 1995.

Susan M. Fall, Gemrich, Moser, Bowser & Lohrmann, Kalamazoo, MI, for Robert Alexander, M.D.

Robert L. Alexander, M.D., Plainwell, MI, Pro Se.

Michael C. McDaniel, Frank J. Kelley, Attorney General, Tort Defense Division, Lansing, MI, for Phillip M. Margolis, M.D., John A. Ingold, M.D., C. Gary Artinian, M.D., Donald C. Austin, M.D., Stella S. Evangelista, M.D., Rachel B. Keith, M.D., Ronald A. Nichols, M.D., Jehangir N. Rao, M.D., Michael G. Tranfagglia, P.C., Norman J. Bolton, M.D., Patricia A. Riggs, M.D., Larry J. Andreini, M.D., Emma Jane Conklin, M.D., Amanda S. Prasad, M.D., George J. Tsiatalas, M.D., Edward F. Rodgers, M.D., Herman Fishman.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

Before this court is defendants' motion to dismiss plaintiff's civil rights action filed under 42 U.S.C. §§ 1981, 1983, 1988, 12132 (Americans with Disabilities Act, hereinafter ADA) and supplemental state law claims against members of the Michigan State Board of Medicine (Board), staff members in the Department of Commerce who serve the

Board, and an administrative law judge. For the reasons that follow, defendants' motion to dismiss is granted.

On September 22, 1988, Robert Alexander, M.D. (plaintiff), was convicted in federal court on charges of conspiracy and intent to distribute controlled substances. As a consequence thereof, administrative proceedings by the Board against plaintiff to revoke his license to practice medicine were scheduled to commence on July 10, 1989. As plaintiff was incarcerated at the time in a federal prison in South Dakota, he was unable to attend the proceedings. An adjournment was granted on the condition, to which plaintiff complied, that he voluntarily surrender his license to practice medicine.

On November 7, 1989, administrative law judge Edward Rogers (ALJ) issued an order granting an adjournment of a December 20 hearing if plaintiff met certain preconditions by December 15, 1989. The December 20 hearing was conducted without plaintiff's presence despite his allegation that he met all conditions precedent for the adjournment. The parties were given an opportunity to file motions and briefs, and the ALJ issued an opinion on April 20, 1990.

On August 3, 1990, the Board modified the ALJ's findings of fact and conclusions of law and issued a final order that revoked plaintiff's medical license and imposed a fine of $50,000.00. On September 30, 1990, the Ingham County Circuit Court (state court) vacated and remanded the final order for further proceedings. On May 6, 1990, plaintiff appeared before the Board to present proof of his competency to practice medicine, and of a psychological disability. Plaintiff's petition was denied again and this decision, the superseding final order was, again, appealed to the state court.

In a September 20, 1993 opinion, the state court found that the Board had supplied only a partial supporting rationale for its sanction, a violation of Michigan's Administrative Procedures Act (APA). The Board's superseding final order was vacated and the matter remanded again for a final decision wherein the reasons for the Board's choice of sanction were to be articulated to comport with the APA.

The Board issued its amended superseding final order on March 9, 1994 in which it deleted the requirement that plaintiff pay the $50,000 fine *prior to* applying for a licence. Plaintiff petitioned for reinstatement on March 21, 1994, and the Board issued a final order on September 13, 1995, denying reinstatement of plaintiff's license. This matter is under advisement again before the state court.

Defendants raise several grounds upon which this case should be dismissed: (1) Whether plaintiff's federal claims are barred by the *Younger* abstention doctrine?; (2) whether the 11th Amendment bars plaintiff's action?; (3) whether the Board members are entitled to absolute, quasi-judicial immunity?; (4) whether all defendants are entitled to qualified immunity, and state statutory immunity for the state law claims?; and (5) whether plaintiff was deprived of property either by a state actor or under the Due Process Clause? We need not address all grounds to summarily dismiss this complaint.

## I. *Younger* Abstention

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court acknowledged the equitable principles that have been the basis since 1793 for statutory prohibitions[1] against federal court interference with pending state courts' proceedings:

> [T]he basic doctrine of equity jurisprudence [requires] that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate

---

1. Presently 28 U.S.C. § 2283, the "Anti–Injunction Act." This statute prohibits injunctions of state court proceedings "except as authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Though section 1983 has been construed by the Supreme Court to be an exception authorized by Congress, *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the *Younger* abstention doctrine remains, even under *Mitchum*, a separate hurdle for section 1983 plaintiff's to overcome: "we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Id.* at 243, 92 S.Ct. at 2162.

remedy at law and will not suffer irreparable injury if denied equitable relief. *Id.* at 43–44, 91 S.Ct. at 749–50. Moreover, any alleged irreparable harm must be "great and immediate." *Id.* at 45, 91 S.Ct. at 751, 27 L.Ed.2d at 676. *Younger* abstention was also grounded in principles of comity or federalism, that is, "a proper respect for state functions." *Id.* at 44, 91 S.Ct. at 750, 27 L.Ed.2d at 675. *Younger* abstention was extended to state administrative proceedings in *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).[2] At the hearing for defendants' motion to dismiss, plaintiff requested leave to amend his complaint to add a request for injunctive relief. Under Federal Rule of Civil Procedure 15(a), leave to amend a party's pleading "shall be freely given when justice so requires." If the amendment will be futile, however, justice does not require the court to grant leave. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). As the proceedings in state court are pending concerning plaintiff's license revocation, rules of equity and this court's deference to the courts of the state of Michigan would demand that any count requesting equitable relief be dismissed. No showing has been made that great and immediate irreparable harm is present, nor has plaintiff alleged that the license revocation proceedings of the Board are not a legitimate state function. Therefore, plaintiff's request for leave to amend his complaint is denied.

Plaintiff's present claim, however, is one for damages and equitable principles do not apply. Whether federal courts can provide damage remedies when the claim arises out of a pending state court or administrative proceedings is an unresolved question among the circuits.[3] In *Carras v. Williams,* 807 F.2d 1286 (6th Cir.1986), the court distinguished non-criminal state court proceedings from those in which the state is a party. It held, noting *Younger's* reliance on limitations of comity, that, because suits for damages are less intrusive into legitimate state functions, a federal court should not abstain from a case seeking monetary relief when the suit arises from a state judicial proceeding to which the state is not a party absent extraordinary circumstances.

In *Feaster v. Miksch,* 846 F.2d 21 (6th Cir.1988), a state criminal defendant was seeking damages under section 1983 for the alleged unlawful execution of a search warrant, the validity of the same being an issue in the state court criminal proceedings. The court concluded, relying upon considerations of comity, that "when disposition of a federal action necessarily requires the resolution of issues that will determine the outcome of pending state criminal proceedings, *Younger* requires that the federal action not proceed." *Id.* at 23. According to the court, the proper action by the district court in such cases is to stay the federal action pending the final outcome of the state proceedings.

In *Watts v. Burkhart,* 854 F.2d 839 (6th Cir.1988), the district court's dismissal of a physician's section 1983 action to *enjoin* state administrative proceedings begun to summarily suspend his license to practice medicine was upheld. However, the district court's dismissal of the physician's action for damages was reversed as the court held the action should have been stayed unless the claim for damages could have been redressed in the state proceeding.

In the present case, the state is a party which is an exception under the *Carras* court's rule of no abstention in damage actions. On the other hand, plaintiff cannot seek relief for damages in the state court,[4] a

---

2. *Younger* abstention was extended previously to the "administrative" proceedings of a state bar association in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), but can be distinguished insofar that "administrative" proceedings normally refer to the executive branch of government in contrast to bar association proceedings that are subject to the judicial branch.

3. The Supreme Court declined to answer the question in *Deakins v. Monaghan,* 484 U.S. 193, 202 n. 6, 108 S.Ct. 523, 529 n. 6, 98 L.Ed.2d 529 (1988).

4. The powers granted to the state court when reviewing the actions of an administrative agency do not include the power to award damages. The court "may affirm, reverse or modify the decision or order or remand the case for further proceedings." M.C.L. § 24.306.

reason for this court to stay the case under *Watts.* Applying *Feaster,* the state court is determining the propriety of the license revocation under section 85 of Michigan's Administrative Procedures Act, a matter which would not be determined in a due process analysis by this court, thus not invoking abstention. At most, the action could be stayed until the proceedings below have abated. Nonetheless, other factors compel the court to dismiss the case.

## II. Eleventh Amendment

Defendants also raise the 11th Amendment as a bar to plaintiff's action. The amendment has been construed to bar suits in federal court against state officers acting in their official capacity. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). What constitutes "official" in contrast to "individual" capacity was answered in *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The Court held that the phrase found in *Will,* "acting in their official capacities," refers to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury. *Id.* at 26, 112 S.Ct. at 362. Some circuits look to the manner in which the complaint is drafted and others to the defenses raised. The Sixth Circuit has held that "plaintiff's seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." *Wells v. Brown,* 891 F.2d 591, 592 (6th Cir. 1989). Plaintiff's complaint does not indicate that defendants are being sued in their individual capacities:

> 20. ... Defendant members *acting together as a Board* of Medicine modified the Defendant Administrative Law Judge's findings of the [sic] fact and conclusions of law and issued its final order revoking Plaintiff's medical license and imposing fines of Fifty Thousand Dollars ($50,-000.00).
>
> \* \* \* \* \* \*
>
> 33. That the selective prosecution of the Plaintiff by the Defendant's *acting as the Michigan Department of Commerce Board of Medicine and the Administrative Law Judge* constitutes a violation of rights secured to the Plaintiff pursuant to ....
>
> \* \* \* \* \* \*
>
> 44. Plaintiff is informed that the selective prosecution of the Plaintiff by the Defendant's *acting as the Michigan Department of Commerce Board of Medicine and the Administrative Law Judge* constitutes a violation of rights secured to the plaintiff under the .... (Emphasis added.)

Plaintiff countered in his response that the individual defendants acted as individuals and that even if his compliant is "technically deficient" justice should allow him to amend. Such, however, would be futile considering the immunity bars to plaintiff's claim in this court, *infra.*

## III. Immunities

### A. Absolute

■ Defendants also assert that the Board members are entitled to quasi-judicial immunity. In all questions pertaining to immunities under section 1983, the Supreme Court has looked to the common law immunities acknowledged when section 1983 was passed in 1871. In *Watts v. Burkhart, M.D.,* 978 F.2d 269 (1992), the court held that members of the Tennessee state medical licensing board were entitled to quasi-judicial immunity, also known as "absolute immunity," from section 1983 actions against them in their individual capacity. This conclusion was based upon the "solidly established" common law rule in existence in 1871 when section 1983 became law that absolute immunity was extended to " 'any hearing before a tribunal which perform[ed] a judicial function.' " *Id.* at 275, (*quoting Burns v. Reed,* 500 U.S. 478, 490, 111 S.Ct. 1934, 1941, 114 L.Ed.2d 547 (1991) (citation omitted)). The court acknowledges that absolute immunity should not be extended to the Board if it lacks the independence that characterizes judges. *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). The Board consists of ten physicians, one physician's assistant and eight public members. M.C.L. § 333.17021. The governor appoints each member for a four year term and a member cannot serve more than two terms. The

governor may remove or suspend a member in accordance with article five, section ten of the state constitution which permits removal or suspension for gross neglect of duty, corrupt conduct in office, or any misfeasance or malfeasance in office. M.C.L. 333.16121–22. Like the Board in *Watts,* its decisions are not reviewed by its appointing authority and it serves for terms, not at the pleasure of the governor. Though federal judges are truly independent, the Board is as independent as the state judiciary (and perhaps more so because of the effect of term limits) which must stand for periodic re-election. The court, therefore, concludes, that the Board, like the medical licensing board in *Watts,* performs a judicial function.

## B. Qualified

▮▮ Defendants also contend that all defendants are entitled to qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court held that a defense of qualified immunity depends upon the reasonableness of an official's conduct, as measured by reference to clearly established law: "[G]overnment officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.

The Sixth Circuit applied the rules circumscribing qualified immunity to a motion for summary judgment in *Buckner v. Kilgore,* 36 F.3d 536, 539 (1994):

> [W]hen a defendant moves for summary judgment on qualified immunity, a plaintiff must effectively pass two hurdles. First, the allegations must state a claim of the violation of clearly established law. Second, the plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law.... The burden is on the plaintiff to allege and prove that the defendant official violated a clearly established [statutory or] constitutional right.

Plaintiff has met only the first of these hurdles and even then, only with respect to one of the counts in his complaint. In his response to defendants' claim of qualified immunity, he has not alleged how the defendants' actions alleged in his complaint have violated clearly established law. The protections embodied within the due process clause are not, by the nature of clause's terms, capable of clear interpretation in the absence of reference to sources outside the constitutional text, to which plaintiff has not directed the court. The court takes notice that a license to practice medicine has been recognized in other circuits as a protected property right under the due process clause. *See, e.g., Keney v. Derbyshire,* 718 F.2d 352 (10th Cir.1983). The court, however, is unaware of any construction of the due process clause that entitles a person who has voluntarily surrendered a license to practice a profession in exchange for an adjournment of a revocation hearing to be personally present at a subsequently scheduled revocation hearing. In any event, notice and an opportunity to be heard, the essential elements of due process, *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), were made available and none of the named defendants prevented plaintiff from attending the revocation hearing. His absence was directly attributable to his own conduct vis-a-vis federal criminal law.

▮▮ Plaintiff's allegation that he was selectively prosecuted because of his race and, thus, received disparate treatment as compared with white physicians similarly situated is, on its face, a violation of the equal protection clause as enforced by section 1981. Though plaintiff has not directed us to precedents that would show that selective prosecution by an administrative agency is a violation of section 1981, the nature of the statute's terms admit no question that selective prosecution on the basis of race is an infringement upon the same "full and equal benefit of all laws and proceedings for the security of persons and properties as is enjoyed by white citizens, ...." 42 U.S.C. § 1981(a).

With respect to the second hurdle, assuming that plaintiff presented violations of clearly established law, he has not presented any evidence to show a genuine issue of

material fact with respect to his section 1981 complaint. Hence, all defendants are entitled to qualified immunity from plaintiff's section 1983 action.

### III.  Americans with Disabilities Act

Plaintiff also argues that the Board is not immune from plaintiff's claim under the ADA. 42 U.S.C. § 12202 provides that a "State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." Plaintiff requests leave to amend his complaint if we find that his complaint is deficient in identifying the Board as a defendant. This court finds no need to amend his complaint as the pleadings are sufficiently clear that he was suing the Board which is as an entity of the state, not each member in their individual capacity, and the state is potentially liable for the acts of its entities.

█ Count three of plaintiff's complaint alleges that defendants violated the ADA in both the revocation and failure to reinstate plaintiff's license. The court notes, however, that the ADA was not effective until January 26, 1992, *Eisfelder v. Mich. Dep't of Natural Resources,* 847 F.Supp. 78, 84 (W.D.Mich. 1993), and the revocation of plaintiff's license occurred before this date. Therefore, the only matter in question under plaintiff's ADA complaint is defendants' refusal to reinstate plaintiff's license, which occurred after the effective date of the ADA.

█ Concerning the Board's failure to reinstate plaintiff's license, 42 U.S.C. § 12131(2) defines "qualified individual with a disability" in pertinent part as

an individual with a disability who, with or without *reasonable* modifications to rules, polices or practices ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. (Emphasis added).

42 U.S.C. § 12132(2) provides that

no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity.

Considering the text of section 12132(2), it is questionable whether the Board's duty to license physicians can be characterized as a "service" being denied to plaintiff or whether the Board's refusal to reinstate his license denies him participation in "programs or activities provided" by a state entity. The Board of Medicine is, if anything, a service, program or activity provided for the public's benefit and safety, not for the benefit of any given individual who does not meet the state's requirements for practicing medicine.

In any event, plaintiff is not a "qualified individual with a disability" under the ADA. The very nature of the police powers exercised by state boards of medicine require the state to discriminate on the basis of, among other considerations, a mental condition harmful to the public's safety. By the very nature of the practice of medicine, given the physician's necessary independence to "practice" his art, no reasonable modification can be made to a policy of restricting medical practice to those without evidence of mental disabilities. Under M.C.L. § 333.16247(1), the Board may reinstate a license only if the Board is satisfied by "clear and convincing evidence that the applicant is of good moral character, [and] is able to practice the profession with reasonable skill and safety...." The Board cannot exercise its duty without the discretion to consider the impact of a mental disability upon one's ability to practice with reasonable skill and safety. The danger of irreparable harm to the public is too great to deny the Board such discretion. To require otherwise is unreasonable.

In this case, the Board denied reinstatement upon consideration of plaintiff's moral character and his ability to practice medicine with safety. As stated in its findings of fact and conclusions of law of September 13, 1995:

Throughout the proceeding on remand of 1992 as well as the reinstatement process in 1994, Petitioner's focus has been on the explanation of the course and treatment of his bipolar illness. Although this is an important aspect of Petitioner's ability, this Board is mindful of the fact that the

revocation of Petitioner's license was based on a conviction. Petitioner convicted a felony. He was convicted by a jury of that felony. He illegally distributed drugs in the course of his medical practice, knowing well that these prescriptions were not written for legitimate medical purposes. To this day, Petitioner refuses to answer questions concerning his misconduct. Petitioner has failed to submit proof that he has learned from this experience.

As a matter of law, a board of medicine must have this discretion to discriminate for the public's health and safety. Only an abuse of a board of medicine's discretion, none of which has been shown in this case, can subject the state to liability under the ADA.

The court notes that this case appears to be one of first impression under the ADA. However, in a case with a similar issue, *Doe v. Maryland Medical System Corp.*, 50 F.3d 1261 (4th Cir.1995), a resident in neurosurgery who had contracted the HIV virus and was permanently suspended from surgical practice was deemed not to be a qualified individual because he posed a significant risk to the health or safety of others that could not be reasonably accommodated. The court found that even if extra precautions were taken, "some measure of risk will always exist because of the type of activities in which [the HIV infected physician] is engaged." *Id.* at 1266. Likewise, due to the nature of the practice of medicine, plaintiff's mental condition exposes the public to some measure of risk to which the Board was duty bound to consider when considering whether to reinstate plaintiff's license. Plaintiff's case is, therefore, dismissed on all counts.